DARRELL DEON HARRISON

v.

COMMONWEALTH OF VIRGINIA

Record No. 920264

November 6, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, Hassell, JJ.,
and Poff, Senior Justice

*Steven D. Benjamin* for appellant.

*Michael T. Judge, Assistant Attorney General (Mary Sue Terry, Attorney General,* on brief), for appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

In this appeal from a judgment entered by the Court of Appeals affirming a conviction of conspiracy to distribute cocaine, the dispositive question is whether the defendant, Darrell Deon Harrison, made a knowing and intelligent waiver of his *Miranda* rights. We conclude that the Circuit Court of Henrico County correctly denied the defendant's pre-trial motion to suppress his inculpatory statements to the police, and we will affirm its judgment and that of the Court of Appeals.

The relevant evidence is detailed in the transcript of the suppression hearing, and, under familiar principles, we will consider the testimony in the light most favorable to the Commonwealth. In company with Thomas Freeman, also known as "Slick", and his brother Ricky Freeman, Harrison was arrested September 9, 1988 and charged with conspiracy to distribute 14 ounces of cocaine. Investigator Robert T. Dickenson placed Harrison in his car, and reading from a printed card, advised him as follows:

### MIRANDA WARNING

1. You have the right to remain silent.
2. Anything you say can and will be used against you in court.
3. You have the right to talk to a lawyer and have him present while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you, without cost, before any questioning, if you desire one.

Reading from another card, Dickenson then asked the defendant if he understood those rights, and Harrison answered, "Yes." When asked if he wished "to waive them and talk to us now", Harrison "hung his head down and started to cry openly." During the trip to the Public Service Building, there was no conversation between the defendant and the police. Harrison rode with "his eyes closed and his head back" as if he were asleep.

Detective Brian P. Gaudiose testified that when Harrison arrived at the interview room, he "was wondering what was going to happen to him". In reply to Harrison's question, Gaudiose told him that he "couldn't make him any promises, but if he cooperated with the Commonwealth, that would be brought to their attention" and that "his cooperation would help him". Gaudiose explained that the police "wanted his cooperation against Mr. Freeman". In response,

Harrison "went over the whole scenario" of the day's events. He told the detective that "he was doing a 'coke' with . . . Mike"; that "the Cocaine deal was supposed to go at Edward Meyers' house"; that "he didn't have enough Cocaine to do the deal, so he contacted 'Slick' Freeman, and 'Slick' Freeman put the package together".

In the course of the 45 minute interview, Harrison repeated this story "at least three times". After the first account, Gaudiose and Harrison "talked about other people that he might be 'able to do'." Harrison indicated his willingness to make a telephone call to his New Jersey drug "connection" and to cooperate concerning "somebody who had a connection with California." However, Harrison said that "he was afraid that Thomas Freeman would have him killed if he cooperated."

Following Harrison's account of the day's events, Gaudiose sought to "calm him down" by arranging an interview with an Assistant Commonwealth's Attorney. Gaudiose introduced him as "the man who would be prosecuting the case". Harrison "never indicated that he wanted to see an attorney." Gaudiose testified that "the Commonwealth sat down and explained his rights to him, explained to him that if he did give us a statement concerning 'Slick' Freeman, or if he testified against 'Slick' Freeman . . . that that couldn't be used against him at a later date" because by giving "that testimony in that situation he became immune from that being used against him."

During that session, which lasted "10 or 15 minutes", "no promises were made by the Commonwealth." After the Assistant Commonwealth's Attorney left, the detectives attempted to make a tape recording of the conspiracy story Harrison had told Gaudiose in order "to get a statement memorialized . . . in case, in fact, something did happen to him." The transcript of that recording shows that Detective Sipple read the contents of the *Miranda* card again, that Harrison said that he understood his rights, and that, in answer to the detective's question, he acknowledged that he was "going to make this statement . . . because this is what [he] wish[ed] to do". However, when Sipple began the interview, Harrison asked, "Is this going to be used against me in a court of law?" Sipple replied, "Possibly." Sipple reminded the defendant that the Commonwealth's Attorney had "explained to you . . . that if you did what you told us you were going to do, that this couldn't be used against you. However, if that situation changes by your choice, then this could be evidence against you."

At that point, Harrison told Sipple to stop the tape recorder. Sipple complied and stated, ''I'll stop it because you want to stop it.'' Harrison then resumed his conversation with the detectives. Gaudiose testified that Harrison ''reiterated the story . . . about what happened . . . he was afraid of the tape, he was afraid of testifying against 'Slick' '' but he agreed again to cooperate in exposing his New Jersey ''connection''. Two days later, Harrison ''decided that he didn't want to cooperate'' and at trial the Commonwealth introduced the officers' testimony repeating the inculpatory statements Harrison had made.

A jury convicted Harrison of conspiring to distribute cocaine and, confirming the verdict, the trial court sentenced him to the penitentiary for 15 years and to a fine of $1,000. The Court of Appeals affirmed the judgment, and we awarded Harrison an appeal.

In support of his pre-trial motion to suppress his statements to the police, Harrison argued that his statements were inadmissible because the Commonwealth failed to prove ''a knowing, intelligent, voluntary waiver of his *Miranda* rights.'' The trial court denied the motion. An essential predicate to that ruling was a finding that Harrison had made a valid waiver. On brief in this Court, the defendant says that ''[b]ecause of the failure of the Commonwealth to prove the *Miranda* predicate, the defendant's statement should not have been admitted. It is the admission of the statement over the failure to prove a waiver that is the subject of this appeal.'' Pursuing that position in oral argument, Harrison urged us to reverse his conviction on the ground that ''the confession should not have been admitted because the waiver had not been properly proven.''

Absent a knowing and intelligent waiver of the Fifth Amendment right against self-incrimination and the Sixth Amendment right to the assistance of legal counsel, a confession made by a suspect during in-custody interrogation is inadmissible in evidence against him. *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Even when the suspect has made a valid waiver, a confession made later is inadmissible if it appears that it was made involuntarily. *Miller* v. *Fenton*, 474 U.S. 104 (1985). Whether such a confession was voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances. *Id.* at 112.

While the *Miller* Court reserved judgment on the question whether a waiver of *Miranda* rights was a factual issue, *id.* at 108 n.3, the Court noted that a lower court's determination of a factual

issue is entitled to a presumption of correctness, *id.* at 112, and that "an issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question", *id.* at 113 (citation omitted). In an opinion rendered two years later, the Seventh Circuit Court of Appeals decided the question reserved by the Supreme Court in *Miller*:

> As a reviewing court, our inquiry as to whether a defendant has been forced to confess is best gleaned from the totality of the circumstances. However, this differs from the discrete inquiry of whether the waiver was voluntary. The former requires a determination of whether the procedure was fundamentally fair . . . while the latter requires only a factual inquiry.

*Bryan* v. *Warden, Indiana State Reformatory,* 820 F.2d 217, 220 (7th Cir.), *cert. denied,* 484 U.S. 867 (1987); *accord Smith* v. *Duckworth,* 856 F.2d 909, 911 (7th Cir. 1988).

 Unlike the voluntariness inquiry relevant to the admissibility of a confession where the question is one of law subject to an independent review by an appellate court, *Miller,* 474 U.S. at 115, the inquiry whether a waiver of *Miranda* rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness.[1]

> [The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of the circumstances. This factual finding will not be disturbed on appeal unless plainly wrong.

*Watkins* v. *Commonwealth,* 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985) (citations omitted), *cert. denied,* 475 U.S. 1099 (1986); *accord Mu'Min* v. *Commonwealth,* 239 Va. 433, 440, 389 S.E.2d 886, 891 (1990), *aff'd on other grounds,* 500 U.S. ___, 111 S.Ct.

---

[1] The Court of Appeals determined the case by reframing the question presented as one of voluntariness of the confessions. We focus our review on the *Miranda* issue as framed by the defendant in this Court.

1899 (1991); *see also Goodwin* v. *Commonwealth*, 3 Va. App. 249, 253, 349 S.E.2d 161, 163 (1986).

■ Reaffirming that rule and applying that standard of appellate review, we consider the facts relevant to the trial court's ruling on the motion to suppress. Harrison never made a specific waiver of his *Miranda* rights. In response to the question by the arresting officer if he wanted to do so, he began to cry and remained silent on the trip to the Public Service Building. "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda*, 384 U.S. at 475. However, *Miranda* does not require a waiver to be in writing or to be verbalized expressly.

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

*North Carolina* v. *Butler*, 441 U.S. 369, 373 (1979) (footnote omitted) (waiver upheld when defendant expressly refused to sign form); *accord, Cheng* v. *Commonwealth*, 240 Va. 26, 35, 393 S.E.2d 599, 604 (1990); *Eaton* v. *Commonwealth*, 240 Va. 236, 251, 397 S.E.2d 385, 394 (1990); *Blackmon* v. *Blackledge*, 541 F.2d 1070, 1072 (4th Cir. 1976).

■ Harrison suggests, and for purposes of this opinion we will assume, that his silence following his acknowledgement that he understood his *Miranda* rights was an implicit invocation of those rights. The record shows that whatever dialogue occurred between the defendant and the police during the arrest procedure stopped when Harrison began to cry. No conversation occurred during the trip to the Public Service Building. Upon arrival, Harrison reopened

the dialogue by inquiring "what was going to happen to him". *See Oregon* v. *Bradshaw*, 462 U.S. 1039, 1045-46 (1983) (valid waiver occurred after accused reopened dialogue by inquiring, " 'Well, what is going to happen to me now?' "). If "the accused, not the police, [reopens] the dialogue with the authorities", a court, upon consideration of that fact and "the totality of the circumstances", may reasonably find that the accused has made a "knowing and intelligent" waiver of his rights. *Edwards* v. *Arizona*, 451 U.S. 477, 486 n.9 (1981).

Considering whether Harrison then made a valid waiver, we turn now to the other facts and circumstances attending his first confession. Harrison argues on brief that the police "misled him as to his rights", that "the explanation . . . was confusing", and that they "offered overbearing inducements for the defendant's waiver of his rights" at a time when he "was extremely upset, sobbing heavily, and in tremendous fear of what the Freemans, his co-defendants, would do to him."

■ It is true that Harrison was visibly depressed when he reopened the dialogue with the police. However, although a waiver, like a confession, made by an accused while insane is involuntary and inadmissible in evidence against him, *see Townsend* v. *Sain*, 372 U.S. 293, 309 (1963), "mere emotionalism, confusion, or depression do not dictate a finding of mental incompetence or insanity." *United States* v. *Rouco*, 765 F.2d 983, 993 (11th Cir.) (citations omitted), *cert. denied* 475 U.S. 1124 (1985); *see also United States* v. *Feola*, 651 F. Supp. 1068, 1119 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.) (unpublished opinion), *cert. denied sub nom. Marin* v. *United States*, 493 U.S. 834 (1989) ("this Court . . . will not find official coercion in the mere fact of questioning an arrested suspect who is visibly distressed").

■ We agree that the methods used to induce a waiver of *Miranda* rights, like those used to induce a confession, may sometimes constitute coercive police activity. *See, e.g., Jackson* v. *Commonwealth*, 116 Va. 1015, 1020, 81 S.E. 192, 194 (1914); *Colorado* v. *Connelly*, 479 U.S. 157, 167 (1986) ("Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' . . . ."). Upon a review of the facts of this case, we find nothing of that nature. When Harrison remained mute in response to the question whether he wanted to waive his rights, the arresting officers discontinued interrogation. Later, when Harrison asked what was going to happen to him, the detectives told him that they

wanted his assistance in prosecuting one of his co-conspirators; that his cooperation would be brought to the attention of the Commonwealth; and that his cooperation could help him. Without more, and advised that the police could make no promises of help, Harrison proceeded to make a detailed narrative statement admitting his participation in the criminal offense committed that day.

He made that statement even though he freely acknowledged that he understood that he had a right to say nothing and the right to the advice of legal counsel. He did so as a 23-year-old high school graduate and a veteran of three years' service in the United States Marine Corps. He did so without any promise, threat, ''overbearing inducement'', or any other coercive police activity.[2]

■ We hold, therefore, that implicit in the making of Harrison's first confession was a knowing and intelligent waiver of his *Miranda* rights and that the Court of Appeals correctly concluded that the confession was voluntary and properly admitted in evidence at trial.

We turn now to the other inculpatory statements which Harrison contends the trial court should have suppressed. The *Miranda* warnings were repeated, and Harrison made ''at least three'' confessions during his conversations with the police.

> [W]here a person, after receiving *Miranda* warnings, has once given a knowing and intelligent waiver of his constitutional rights, such waiver will be presumed to continue in effect throughout subsequent custodial interrogations until the suspect manifests, in some way which would be apparent to a reasonable person, his desire to revoke it.

*Washington* v. *Commonwealth*, 228 Va. 535, 548-49, 323 S.E.2d 577, 586 (1984), *cert. denied*, 471 U.S. 1111 (1985).

Yet, citing the detective's testimony that the prosecutor had explained that if Harrison ''did give us a statement concerning 'Slick' Freeman, or if he testified against 'Slick' Freeman . . . that

---

[2] Promises of lenience designed to induce an accused to cooperate ''have generally been found insufficient to overbear a defendant's free will.'' *Rodgers* v. *Commonwealth*, 227 Va. 605, 616, 318 S.E.2d 298, 304 (1984) (citations omitted). Indeed, the Supreme Court has held an interrogator's deliberate falsehood to be, ''while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.'' *Frazier* v. *Cupp*, 394 U.S. 731, 739 (1969).

that couldn't be used against him'', Harrison argues that the confession he made following the abortive attempt to tape record his statement was improperly induced and that all of his inculpatory statements should have been suppressed. We disagree.

 We have held that the original waiver was valid and that the first confession was voluntary and properly admitted in evidence. The record discloses no difference between the facts stated in that confession and the facts stated in the second and third confessions. Hence, the incriminating effect of the latter was merely repetitious and cumulative of that of the former. It is well settled in this jurisdiction that the exclusion of evidence favorable to a party in a civil action on the ground that it is repetitious and cumulative is a matter within the sound discretion of the trial court and that its ruling is entitled on review to a presumption of correctness. *Philip Morris Incorporated* v. *Emerson*, 235 Va. 380, 410, 368 S.E.2d 268, 284 (1988); *Eason* v. *Eason*, 203 Va. 246, 254, 123 S.E.2d 361, 367 (1962); *Mawyer* v. *Thomas*, 199 Va. 897, 902, 103 Va. 217, 221 (1958). We see no reason why the same rule and the same standard of appellate review should not apply to the admission of Harrison's confessions of criminal conduct. *See Little* v. *State*, 413 N.E.2d 639, 644 (Ind. App. 1980) (citing *Pierce* v. *State*, 253 Ind. 650, 654, 256 N.E.2d 557, 559 (1970)) (''The admission or exclusion of cumulative evidence is within the sound discretion of the trial court.'').

Finding no prejudice to the defendant and no abuse of the trial court's discretion in its ruling on the motion to suppress, we will affirm the judgments entered below.

*Affirmed.*