COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


RONALD CASTANEDA RAMIREZ, A/K/A
 RONALD CASTANADA, S/K/A
 RONALD CASTANADA-RAMIREZ                 MEMORANDUM OPINION[*] BY
                                          JUDGE MARVIN F. COLE
v.    Record No. 2971-95-2                 JANUARY 14, 1997

COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
                       Thomas V. Warren, Judge

          Michael Morchower (Morchower, Luxton &
          Whaley, on brief), for appellant.

          Monica S. McElyea, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Ronald Castaneda Ramirez (defendant) was convicted in a

bench trial for transportation of one or more ounces of cocaine

into the Commonwealth with the intent to sell or distribute it in

violation of Code § 18.2-248.01 and for distribution of cocaine

in violation of Code § 18.2-248.  On appeal, he contends that the

trial court erred in failing to suppress statements he made to an

officer because the statements were made in violation of Miranda

v. Arizona, 384 U.S. 436 (1966).[1]  We affirm the convictions.

     On review, we examine the evidence "in the light most

_____

          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

          [1]This appeal was granted on April 22, 1996, on the sole
issue of whether the defendant's statements were voluntary and
properly introduced into evidence.

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it. Id. The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely within the province of the fact finder. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the issues on appeal.

On January 26, 1995, Special Agent Timothy Reibel of the Virginia State Police negotiated a sale of cocaine outside the Weston Motel in Crewe, Virginia. Reibel gave the defendant two thousand seventy-five dollars ($2,075) and the defendant reached under the front seat of the car he was in, pulled out two clear plastic baggies containing cocaine and delivered them to the officer. Police officers located in an adjacent motel room came out and physically took control of the defendant. Special Agent Steve Berry, who was Reibel's supervisor, arrested the defendant for distribution of cocaine. According to the testimony of Special Agent Reibel, Berry immediately advised the defendant of his Miranda rights.

The defendant was escorted into one of the motel rooms where he was interviewed by Special Agent Steve Berry of the Virginia State Police and Investigator John Rutledge of the Nottoway County Sheriff's Office. Before any interrogation commenced, Berry read the defendant his Miranda rights from a card. One right read to him was that he had "the right to talk to a lawyer and have him present while [he was] being questioned. . . ." Berry testified that he asked Ramirez if he understood his rights and he said he did. Berry also testified that he did not have any problem conversing with Ramirez in English.

During the interview, Ramirez admitted he sold two ounces of cocaine to the undercover officer. When asked where the rest of the cocaine was, Ramirez stated that was all he brought with him. Berry inquired further and said, "[A]re you telling me that's all the cocaine that you brought up from Florida to sell?" The defendant replied, "Yes." Berry then questioned, "[A]re you telling me you transported two ounces of cocaine from Florida to Virginia, obtained a motel room, sold the cocaine to the undercover officer and made enough money to pay for your expenses?" The defendant responded, "Yes."

After Berry commenced questioning the defendant about a hotel room key in his pocket, the defendant said he would like to talk to a lawyer. Berry then stopped the interrogation and did not question the defendant further.

Berry did not record the defendant's statement. He made

notes of his questions and answers during the interview and subsequently dictated his police report from the notes.  Berry testified that upon reviewing his notes the next day, he added "Miranda" and the date to them because he had neglected to include this information when he was originally writing them.

Investigator John Rutledge did not personally question the defendant.  He testified that he was in and out of the motel room and did not pay any attention to the conversation between the police and the defendant.  He stated that he did not hear any of it.

Ramirez testified only upon the suppression issue and not upon guilt or innocence.  He stated that he did not "remember that [Berry said] anything about" Miranda rights because he spoke fast and there were several other officers speaking at the same time.  He testified that he was first advised of his rights by Reibel at the Sheriff's office.  He did not sign anything indicating that he understood his rights.

The defendant testified that his native language was Spanish, that he attended school through the twelfth grade in Costa Rica, and that he received a GED in Spanish while living in New York.  At the time of the trial, he had lived in the United States for fourteen years and had been speaking English about four years.

The trial judge reviewed the evidence.  He stated that he had no difficulty understanding the defendant and he did not

4

believe he had "particular difficulty with communication." The trial judge stated that he believed Berry's testimony that he gave defendant his _Miranda_ warnings and that he did not believe that Berry had falsely altered his notes to indicate that _Miranda_ rights were given.

We are confronted with two questions: (1) the standard of review concerning the validity of a waiver of _Miranda_ rights; and (2) the standard of review concerning the voluntariness of a confession.

Upon the first question, the Supreme Court has established the standard:

> [T]he inquiry whether a waiver of _Miranda_ rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness.
>
> > [The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of circumstances. This factual finding will not be disturbed on appeal unless plainly wrong.

_Harrison v. Commonwealth_, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992) (citation omitted).

"An express written or oral statement of waiver of rights is not required. Waiver can be inferred from the actions and words

5

of the person interrogated."  Cheng v. Commonwealth, 240 Va. 26, 35, 393 S.E.2d 599, 604 (1990).  In Cheng, the Supreme Court held that Cheng's decision to talk with the police officer, after having been advised of his Miranda rights, constituted an implied waiver of the Miranda rights.

In this case, the trial judge stated in the record that he believed Special Agent Berry and that the Miranda warnings were given prior to the defendant's statements.  He also stated that he had no difficulty communicating with the defendant.  There is credible evidence in the record to support the trial court's determination that the defendant waived his Miranda rights, and we so find.

Second, although the defendant may have waived his rights, it must be shown that "the waiver is made voluntarily, knowingly and intelligently."  Miranda, 384 U.S. at 444.  The Supreme Court of Virginia has established the standard of review as follows:

> "Whether a statement is voluntary is ultimately a legal rather than factual question.  Subsidiary factual questions, however, are entitled to a presumption of correctness.

> The test to be applied in determining voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'  In determining whether a defendant's will has been overborne, courts look to 'the totality of all the surrounding circumstances,' including the defendant's background and experience and the conduct of the police."

6

<u>Roach v. Commonwealth</u>, 251 Va. 324, 341, 468 S.E.2d 98, 108 (citations omitted), <u>cert.</u> <u>denied</u>, 117 S. Ct. 365 (1996).

The argument advanced by the defendant is that Spanish was his primary language and that he did not speak the best English. He testified that the officer was speaking so fast that he did not hear him because there were other "guys" in the room speaking. He does not contend that he was threatened or coerced in any way. The interview lasted about five minutes and was terminated when the defendant stated he wanted to consult an attorney.

The Commonwealth presented evidence that the defendant was read the <u>Miranda</u> warnings from a card and he stated that he understood them. This is corroborated by the fact that after a short period of interrogation, he did in fact request an attorney. The record also disclosed that Ramirez obtained a GED in New York in Spanish, and has been in this country for fourteen years. Splecial Agents Reibel and Berry both testified that they had no difficulty in communicating with him. The trial judge commented that the testimony before him convinced him that the defendant did not have any "particular difficulty with communication." The evidence does not disclose any threats or coercion on the part of the police.

Based upon our independent examination of the record, we conclude that the defendant's will was not overborne, that his capacity for self-determination was not critically impaired, and

7

that his confession was the product of a free and unconstrained choice.

For the foregoing reasons we affirm the convictions.

<u>Affirmed.</u>