COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Bumgardner and Frank
Argued at Chesapeake, Virginia


SHAREF McDOWELL

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 3065-02-1              JUDGE RUDOLPH BUMGARDNER, III
                                          NOVEMBER 12, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          Frederick B. Lowe, Judge

          Andrew G. Wiggin (Andrew G. Wiggin, P.C., on brief), for
          appellant.

          Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General, on brief), for appellee.


       Sharef McDowell appeals his convictions of distribution of cocaine and conspiracy to

distribute cocaine.  The trial court denied his motion to suppress incriminating statements

because it found the defendant waived his Miranda rights before making the statements.

Concluding that the defendant did waive those rights, we affirm.

       On appeal from a denial of a motion to suppress, the defendant has the burden to

establish the ruling was an error.  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d

259, 261 (1997) (*en banc*).  "[W]e are bound by the trial court's findings of historical fact unless

'plainly wrong' or without evidence to support them and we give due weight to the inferences

drawn from those facts by resident judges and local law enforcement officers."  Id. at 198, 487

S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Following his arrest, Detectives Fox and Grover met with the defendant at the police station.  Fox read the defendant his <u>Miranda</u> rights from a preprinted card.  He asked the defendant whether he understood his rights, and the defendant responded, "Uh-huh," and nodded his head up and down.  As Fox began inquiring whether the defendant wished to cooperate with the police, the defendant interrupted and asked upon what charges they were holding him.  Fox answered the question, and asked the defendant again, "if he wanted to cooperate."  Fox explained what that meant, but the defendant "didn't answer."  He remained silent.  When Fox asked further questions, the defendant began responding, and then made incriminating statements.[1]  Grover described the defendant as "laid back" and "pretty relaxed" during the interview.  Fox testified the defendant "was sitting on a bench . . . sort of slouched back, and he seemed very calm . . . ."

The defendant's recollection of the interview was different.  He testified that he told the detectives he did not want to answer their questions and that he said no when they asked if he wanted to cooperate.  He also denied asking the detectives to specify the charges.

"[W]hether a waiver of <u>Miranda</u> rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness."  <u>Harrison v. Commonwealth</u>, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).  We consider whether the "totality of the circumstances" supports the trial court's finding.  <u>Fare v. Michael C.</u>, 442 U.S. 707, 725 (1979).

---

[1] Fox asked the defendant if he was given a urine test, would it be positive for cocaine use.  The defendant "shook his head from side to side indicating no."  Grover asked whether the defendant brought three or four grams of cocaine.  The defendant responded, "'It won't even that much.'"  Fox then explained to the defendant that he "could not believe that he had given the cocaine to the white male . . . before he had received the money."  The defendant responded, "I was not going to.  I felt it."  Additionally, the defendant "almost bragged that he didn't hurt himself and that he was fine" after he jumped off a second-floor hotel balcony where the transaction took place.

When an accused understands his rights, remains silent after warnings are given, and engages in a "course of conduct indicating waiver," waiver "can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373 (1979). As explained in Connecticut v. Barrett, 479 U.S. 523, 529 (1987), "Miranda gives the defendant a right to choose between speech and silence, and Barrett chose to speak."

In this case, the defendant did not simply remain silent after receiving the Miranda warning. He indicated clearly that he understood those rights. He then chose to interject himself into the interview. The police answered his question and continued with their question of whether the defendant wanted to cooperate.

When the officers sought his cooperation, the defendant did not expressly waive his rights or invoke them; he was silent.[2] The defendant's silence was equivocal. It may have reflected indecision, ambivalence, or even calculation about whether to cooperate. Miranda may not be read "so narrowly as to compel police interrogators to accept any statement, no matter how equivocal, as an invocation of the right to remain silent." Midkiff v. Commonwealth, 250 Va. 262, 268, 462 S.E.2d 112, 116 (1995). Midkiff maintained he invoked his right to remain silent with the statements: "I'll be honest with you, I'm scared to say anything without talking to a lawyer," and "I don't got to answer that, Dick, you know." Id. at 267, 462 S.E.2d at 115. The Court held he had not. Cf. Davis v. United States, 512 U.S. 452, 459 (1994) (police not required to stop questioning when suspect makes equivocal request for counsel).

---

[2] The defendant's reliance on Harrison for the proposition that silence amounts to an invocation of the right to remain silent is misplaced. The Court assumed Harrison invoked that right by remaining mute after being advised of his Miranda rights. It then held Harrison's statements were knowingly and voluntarily made when the police urged his cooperation and he reopened the dialogue by asking, "what was going to happen to him." 244 Va. at 583-84, 423 S.E.2d at 164-65.

The trial court declined to interpret the defendant's silence as an invocation of the right to remain silent. When the officers asked questions pertaining to the charged offenses, the defendant chose to answer. The defendant's overall conduct[3] and responses permit a finding that the defendant did not invoke his right to remain silent, but voluntarily waived it.

Evidence of coercive police activity is a prerequisite to finding a waiver was not voluntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986). The evidence in this case does not suggest coercive police activity. The circumstances did not require the officers to stop asking questions, and the evidence supports the trial court's ruling that the defendant willingly talked to the officers with a full appreciation of his Miranda rights. Accordingly, we affirm.

Affirmed.

---

[3] In determining whether his waiver was made knowingly and voluntarily, we may also consider the defendant's "background and experience and the conduct of the police." Correll v. Commonwealth, 232 Va. 454, 464, 352 S.E.2d 352, 357 (1987). The defendant had been arrested thirteen months earlier on another charge. At that time, the defendant was given Miranda warnings, waived them, and confessed. These facts do not support the defendant's contention that he invoked his right to remain silent and that the detectives failed to "scrupulously honor" that request.