COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Kelsey
Argued at Chesapeake, Virginia


ROBERT LELAND HURT

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2802-06-1           CHIEF JUDGE WALTER S. FELTON, JR.
                                                         MARCH 18, 2008
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                                    William R. O'Brien, Judge

                  Tanya Bullock (Meggan B. Sullivan; Bullock & Cooper, on brief),
                  for appellant.

                  Alice T. Armstrong, Assistant Attorney General II (Robert F.
                  McDonnell, Attorney General, on brief), for appellee.


        Robert L. Hurt (appellant) was convicted of first-degree murder in violation of Code

§ 18.2-32, and arson of an occupied dwelling in violation of Code § 18.2-77.  He contends the trial

court erred in denying his pre-trial motion to suppress statements he made to detectives on March

25 and 26, 2005.  He contends that, because he was under the influence of Geodon, an

anti-psychotic drug, as well as crack cocaine, at the time he made inculpatory statements to

detectives, he was incapable of understanding the nature of the Miranda rights, and the

consequences of waiving those rights.  He also contends the trial court erred in concluding the

evidence presented at trial was sufficient to convict him of first-degree murder.  For the following

reasons, we affirm appellant's convictions.


--------

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"On appeal of a denial of a motion to suppress, we consider the evidence presented below in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Medley v. Commonwealth, 44 Va. App. 19, 24, 602 S.E.2d 411, 413 (2004) (*en banc*). So viewed, the evidence established that on March 23, 2005, Freddie Beebe came to appellant's trailer home and demanded appellant pay past drug debts. Appellant brutally struck him multiple times in the head with a metal pipe, before beating and kicking him into unconsciousness.[1] Once Beebe lost consciousness, appellant put a plastic bag over his head and sealed the bag around his neck. Appellant then wrapped Beebe's body in a carpet and concealed it in a bedroom so that his girlfriend, who he had sent away when Beebe arrived, would not see it on her return. Appellant remained secluded in the trailer home with the body, refusing to respond to anyone coming there.

Two days later, police officers responded to an anonymous request to check on the occupants of appellant's trailer home. When the officers arrived, appellant told them they "need[ed] to back the f**k off" and that if they did not leave, he would "blow his trailer up." The officers smelled gaseous fumes, retreated for their safety, and called the Special Weapons and Tactics (SWAT) unit.[2] After a protracted standoff, the SWAT team eventually entered the home and dragged appellant from the laundry room, which he had set on fire, and arrested him.[3]

---

[1] At the time, appellant was six feet four inches tall and weighed 210 pounds. Beebe was five feet six inches tall and weighed 165 pounds. The beating was so severe that Beebe's sisters did not recognize him when they were asked to identify the body.

[2] The SWAT team is a unit within the police department specially trained for dealing with hostage and crisis situations.

[3] While putting out the fire, firefighters discovered Beebe's body.

Appellant was taken to the hospital for treatment at approximately 7:00 p.m. that evening. He was "[v]ery alert and oriented" when he arrived, but was also "very agitated, combative and cussing." At 8:43 p.m. appellant received an injection of twenty milligrams of Geodon[4] to calm him so that medical personnel could treat his injuries.[5]

After being treated for his injuries, appellant was taken to the police station where he was questioned about the death of Beebe. Detective Hall of the Virginia Beach Police read appellant the Miranda rights from a pre-printed card at 11:03 p.m., and appellant stated that he understood the rights read to him. Appellant admitted to killing Beebe, but claimed he killed Beebe in self-defense. At 11:30 p.m., appellant spoke with a fire investigator, Detective Miner, and claimed the fire was an accident. When Miner spoke with him the following afternoon around 4:30 p.m., appellant admitted he deliberately set the fire to prevent the police from entering his home and arresting him.

Appellant was indicted for first-degree murder and arson of an occupied dwelling. He moved to suppress the pre-trial statements he gave to police and fire detectives on March 25 and 26, arguing that he never made a knowing and intelligent waiver of his Miranda rights. After the trial court heard testimony from the detectives, as well as a psychiatrist and toxicologist regarding the effects of Geodon and crack cocaine used in combination, it denied the motion. Appellant subsequently testified at trial. He admitted that he killed Beebe and that he intentionally set fire to his home.

---

[4] Geodon was described at trial as an anti-psychotic drug used in hospitals to calm patients to permit treatment.

[5] Appellant had abrasions on his face, burns on his arms, and superficial, self-inflicted wounds on his wrists. Before appellant received Geodon, he admitted to his girlfriend, an emergency medical technician (EMT), a police detective, and the treating nurse that he killed Beebe.

After a two-day bench trial, the trial court convicted appellant of first-degree murder and arson of an occupied dwelling. On appeal, appellant asks this Court to determine whether: (1) he knowingly and intelligently waived his Miranda rights; and (2) whether the evidence was sufficient to prove he acted with premeditation and deliberation to sustain his conviction for first-degree murder.

## II. ANALYSIS

Appellant contends that because he was under the influence of Geodon and crack cocaine when he was questioned, he was incapable of making a knowing and intelligent waiver of his Miranda rights. He argues that he did not understand the nature of the rights being abandoned and the consequences of his decision to abandon those rights.[6]

> Longstanding principles of federal constitutional law require that a suspect be informed of his constitutional rights to the assistance of counsel and against self-incrimination. These rights can be waived by the suspect if the waiver is made knowingly and intelligently. The Commonwealth bears the burden of showing a knowing and intelligent waiver.

Jackson v. Commonwealth, 266 Va. 423, 432, 587 S.E.2d 532, 540 (2003) (internal citations omitted). "[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled to a presumption of correctness." Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 162, 163 (1992). "'[The trial court] evaluates the credibility of the witnesses, resolves any conflicts in testimony, and weighs the evidence as a whole. This factual inquiry will not be disturbed on appeal unless plainly wrong.'" Id. at 581, 423 S.E.2d at 163 (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985) (alteration in original).

---

[6] Appellant concedes that his decision to talk with police and fire investigators was voluntary and not the result of police intimidation or coercion.

Here, the treating physician determined that injecting appellant with Geodon was medically necessary to allow medical personnel to treat him. Both the treating nurse and Detective Hall testified that they did not notice a significant change in appellant's demeanor after the medication was administered and that he was still "alert and oriented" during treatment. While the videotaped interrogation shows appellant appearing tired and groggy during his questioning by Detective Hall, he answered each of her questions topically, and even corrected her when she misunderstood him. His statements regarding the killing of Beebe were consistent with what he told his girlfriend, an emergency medical technician (EMT), a police detective, and the treating nurse prior to his being given Geodon. The evidence also showed appellant's awareness of the consequences of his talking with police about the incident, as demonstrated by his initial denials that he intentionally started the fire in his trailer home and his repeated assertions that Beebe had attacked him.

At the suppression hearing, two expert witnesses testified concerning the likely effects of administering twenty milligrams of Geodon to appellant, who had crack cocaine in his system, at the hospital shortly after his arrest. Dr. Saady, an expert in toxicology, testifying for the Commonwealth, explained that twenty milligrams of Geodon is a "routine therapeutic dose" and that dosage was not high enough to override appellant's ability to express his own will or self-determination. Appellant's expert, Dr. Thrasher, a psychiatrist, concluded that Geodon can diminish a person's ability to understand abstract thoughts and control self-protective mechanisms, but stopped short of saying that the dosage of Geodon administered to appellant would render him unable to understand the Miranda warnings, or prevent him from knowingly and intelligently waiving his Miranda rights.

In addition to hearing testimony from two experts regarding the effects of administering Geodon to a person who had crack cocaine in his system, the trial court also viewed the

videotape of appellant's interview with Detective Hall, which included appellant being given his Miranda warnings. The trial court stated it listened very carefully to appellant's answers to questions, noting that when asked for his birth date and social security number, he correctly answered each question, and that he was also able to discuss his employment history and how long he had lived at his current residence. The trial court also noted that appellant was "no stranger to the criminal justice system" having previous felony drug convictions. From the totality of the evidence presented at the suppression hearing, the trial court concluded that appellant knowingly and intelligently waived his Miranda rights prior to giving statements to the investigators. Where, as here, the record shows that the trial court weighed the evidence presented by the experts, and viewed the videotaped recording of the giving and waiver of Miranda rights, it could determine that the Miranda warnings were given, that appellant knowingly and intelligently waived those rights, and that his subsequent statements to the police were clear, responsive, and articulate. We conclude that the factual findings of the trial court are supported by the record and not plainly wrong and that it did not err in finding that appellant made a knowing and intelligent waiver of his Miranda rights. Accordingly, we find that it did not err in denying appellant's motion to suppress the statements he gave to police and fire investigators on March 25 and March 26, 2005.

Appellant also contends the evidence was insufficient to prove the elements of deliberation and premeditation necessary for a conviction of first-degree murder. At oral argument, appellant conceded that if the trial court did not err in denying his motion to suppress and in admitting his pre-trial statements, the evidence produced at trial was sufficient to prove that he was guilty of first-degree murder.

Having determined that the trial court did not err in finding that appellant's statements to the police were admissible, we conclude that the evidence presented a trial was sufficient from

which a rational trier of fact could conclude appellant willfully, deliberately, and with premeditation, killed Beebe.  Accordingly, we affirm his conviction of first-degree murder.

### III.  CONCLUSION

From our review of the record, we conclude appellant knowingly and intelligently waived his Miranda rights when he gave statements to police and fire detectives related to Beebe's murder. We also conclude the record on appeal contains credible evidence to support the trial court's finding that the evidence was sufficient to convict appellant of first-degree murder.  Accordingly, we affirm appellant's convictions.

Affirmed.