COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Athey and White
Argued at Richmond, Virginia


MARCO ANTONIO MARTINEZ AYALA

                                                      OPINION BY
v.        Record No. 0748-22-2            CHIEF JUDGE MARLA GRAFF DECKER
                                                    OCTOBER 31, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Randall G. Johnson, Jr., Judge

Paul C. Galanides for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Marco Antonio Martinez Ayala appeals his convictions for two counts of aggravated

sexual battery of a minor under the age of thirteen in violation of Code § 18.2-67.3. He argues

that the trial court erred by denying his motion to suppress his post-arrest statements to law

enforcement because his waiver of rights was not voluntarily, knowingly, and intelligently given.

We hold that the record supports the trial court's ruling denying the motion to suppress those

statements. Accordingly, the convictions are affirmed.

BACKGROUND[1]

The appellant was charged with committing multiple sex offenses against his

stepdaughter, D.S, between March 2014 and March 2015, when D.S. was six and seven years

---

[1] In reviewing the denial of a motion to suppress, the appellate court "consider[s] the
facts in the light most favorable to the Commonwealth, the prevailing party at trial." *Aponte v.
Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App.
552, 560 (2017)).

old.[2] D.S. did not tell her mother about the appellant's conduct until about five years later, in early 2020, when her mother and the appellant were no longer married.

In May 2020, the appellant was arrested as he was about to leave the country to attend his brother's funeral in Mexico. Henrico County Police Detective Charles K. Walker interviewed the appellant after his arrest. The interview was audio recorded and was played at the suppression hearing and at trial. Although the appellant's native language was Spanish, the interview was conducted in English without an interpreter. The appellant, who had lived in the United States for several years, told Detective Walker that he understood spoken English but could not read or write it. He spoke to the detective in English, and he did not request an interpreter for the interview. Walker testified at the suppression hearing that he would have obtained an interpreter if he thought the appellant needed one but, based on their conversation, he believed the appellant understood English "pretty good."

At the beginning of the interview, the appellant acknowledged to Detective Walker that the charges had been explained to him, but he said he did not "understand a lot of it." The detective personally provided specific information to the appellant about the charges. He told the appellant that he had been charged with the "serious offenses" of rape, aggravated sexual battery, and indecent liberties with a minor. Walker then began the process of advising him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).[3] The detective started by reading

---

[2] In addition to the aggravated sexual battery offenses at issue in this appeal, the appellant was initially charged with rape of a minor and six other sexual battery and indecent liberties offenses. Prior to trial, the court granted the Commonwealth's motion to amend the rape charge to object sexual penetration and to nolle prosequi the other six charges.

[3] The warnings set out in *Miranda* are designed to protect a defendant's constitutional right against self-incrimination during custodial interrogation. *See Berkemer v. McCarty*, 468 U.S. 420, 428-33, 440 (1984); *see also Thomas v. Commonwealth*, 72 Va. App. 560, 574-81 (2020) (discussing the purpose and evolution of *Miranda* warnings).

aloud from a Henrico County Police Division form, written in English, that set out those rights.[4]

When the appellant indicated he did not "know" the right to remain silent, Walker gave him a

Spanish version of the Division's advisement-of-rights form. The detective pointed to each right

on the Spanish form as he read it in English.[5] The appellant verbally acknowledged that he

understood each of his rights.[6] The detective asked him to sign the form to acknowledge that he

understood all of these rights. Detective Walker explained that by signing the document, he was

"not admitting guilt." The appellant signed the Spanish advisement-of-rights form.

Detective Walker then began questioning the appellant. He asked about the

circumstances regarding the allegations and the appellant's relationship with the victim, D.S.

When Walker told the appellant what D.S. said he had done to her, the appellant responded,

"That's what she's saying?" and added, "Wow!" He acknowledged that the allegations were

serious and denied that he improperly touched D.S. When Walker again asked if he denied the

specific allegations, the appellant said that he did not want to say that the incidents did not

happen. Walker responded, "[E]ither you touched her or you didn't." The appellant replied that

D.S. could say whatever she wanted to say and he wanted his attorney to see if she could prove

---

[4] The form used by the Henrico County Police Division in this case is titled "Rights Waiver." However, nothing on the form expressly advises an interviewee that signing it constitutes a waiver of any rights. Therefore, this opinion refers to the document as an advisement-of-rights form or simply a rights form rather than a waiver form.

[5] Here, in keeping with the safeguards of *Miranda*, 384 U.S. at 444, Detective Walker informed the appellant that he had the right to remain silent and to have a retained or court-appointed attorney present during the interview. Walker further explained that if the appellant chose to "make any statement," it "c[ould] be used against [him] in court." Finally, the advisement of rights included the appellant's acknowledgment that "no pressure," "promises[,]" or threats" "ha[d] been made" or "used against" him. The appellant does not challenge the accuracy or completeness of the rights advisement.

[6] Although there was a box on the form beside each right, the appellant did not check any of the boxes. Walker explained that he did not ask the appellant to check the boxes and that he viewed obtaining check marks in the boxes as merely optional.

it. The appellant denied the allegations when Walker asked again. The detective subsequently asked if the appellant had any questions for him. At that point, the appellant told Walker he did not want to say anything more without speaking to his attorney, and Walker ended the interview without questioning him further.

The appellant filed a pretrial motion to suppress the statements he made during the interview, alleging that his lack of English comprehension rendered the use of any of those statements a violation of his *Miranda* rights. At the suppression hearing, the parties agreed that the appellant had obtained a middle school education in Mexico, his country of origin, had been a United States citizen for about eight years at the time of the hearing, and had lived and worked in this country prior to that time.[7] They further agreed that he "had previous experience with police on two occasions," which involved being jailed on (but not convicted of) a domestic violence charge. The trial court admitted documentation into evidence relating to the prior juvenile and domestic relations court proceeding. The prosecutor pointed out that the court documents contained no indication that the appellant had "request[ed] or use[d] an interpreter" in that court.

The trial court admitted into evidence the Spanish and English advisement-of-rights forms used by Detective Walker. It also listened to the audio recording of the interview and heard testimony regarding the interview. The court found that the appellant had "sufficient command of the English language." It denied the appellant's motion to suppress, concluding that he waived his *Miranda* rights voluntarily, knowingly, and intelligently.

---

[7] The Commonwealth proffered without objection at the 2021 suppression hearing that the appellant became a United States citizen when he married D.S.'s mother, which had been approximately eight years earlier. The appellant testified at his 2021 trial that he had been in the United States for eighteen years. *See Tirado v. Commonwealth*, 296 Va. 15, 24 (2018) (noting that "[w]hen considering whether to affirm the denial of a pretrial suppression motion," the appellate court reviews the evidence presented at both the hearing and at trial).

At trial, the prosecutor played the recording of the interview for the jury. She argued it showed that the appellant was evasive about whether he sexually abused the victim and that he never directly denied the allegations. Defense counsel asserted that the appellant did, in fact, deny the allegations during the interview but could have issued a "stronger" and "more emphatic denial" if the interview had been conducted in his native language. After hearing all of the evidence, the jury found the appellant guilty of two counts of aggravated sexual battery.[8] Consistent with the jury's recommendation, he was sentenced to thirty years in prison, with an additional six years imposed and suspended as post-release supervision, and fined $100,000.

ANALYSIS

The appellant argues that his *Miranda* waiver was not made voluntarily, knowingly, and intelligently because he lacked a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). He bases his challenge on the fact that he did not have a Spanish-speaking interpreter for the interview.

In this Court, the appellant "bears the burden to show that the [trial] court committed reversible error by denying [his] motion to suppress." *Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020). The appellate court reviews the legal portions of such a ruling de novo. *See Thomas v. Commonwealth*, 72 Va. App. 560, 574 (2020) (citing *Commonwealth v. Quarles*, 283 Va. 214, 220 (2012)). The evidence, by contrast, is viewed "in the light most favorable to the Commonwealth, granting to it all reasonable inferences" flowing from that evidence. *Id.* (quoting *Giles v. Commonwealth*, 28 Va. App. 527, 532 (1998)). On appeal, therefore, the trial court's related factual findings "will not be set aside . . . unless plainly wrong." *Tirado v.*

---

[8] The jury did not reach a verdict on the object sexual penetration charge, and it is not relevant to this appeal.

*Commonwealth*, 296 Va. 15, 27-28 (2018) (quoting *Angel v. Commonwealth*, 281 Va. 248, 258 (2011)); *see also id.* at 24 (observing that an appellate court "considering whether to affirm the denial of a pretrial suppression motion" reviews the evidence presented at both the suppression hearing and at trial). This deferential standard includes the trial court's assessment of the credibility of the witnesses. *Washington v. Commonwealth*, 75 Va. App. 606, 615-16 (2022); *see Tirado*, 296 Va. at 30.

A *Miranda* waiver has two distinct components: it must be (1) a "choice" that is "uncoerced" and (2) one that is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Tirado*, 296 Va. at 28 (quoting *Moran*, 475 U.S. at 421). The first component—whether the waiver was voluntary—is a legal question. *See id.* The second component—whether the waiver was knowing and intelligent—is a question of fact. *See id.* at 27. Both components must be satisfied for a waiver to be valid. *See id.* at 28.

Regarding the first requirement, the legal component of voluntariness, the appellant provides no legal basis upon which to conclude that his waiver was involuntary. *See id.*[9] The trial court ruled that the appellant's "will was not overborne by anything that Detective Walker said or did" during the interview. *See Secret v. Commonwealth*, 296 Va. 204, 226 (2018) ("'[C]oercive police activity is a *necessary* predicate' to finding a confession constitutionally involuntary." (emphasis added) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986))). The

---

[9] To the extent that the appellant alleges that his brother's recent death impacted his ability to validly waive the rights afforded by *Miranda*, "the Fifth Amendment privilege is not concerned with 'moral and psychological pressures to confess emanating from sources other than official coercion.'" *Kauffmann v. Commonwealth*, 8 Va. App. 400, 405-06 (1989) (quoting *Colorado v. Connelly*, 479 U.S. 157, 170 (1986)). The death of the appellant's brother, therefore, is not relevant to our legal analysis. *See id.* at 402-03, 405-06 (holding that the defendant's *Miranda* waiver was valid even though he was described as "grieving," in "awful condition," and "hysterical" about the suicide of the fourteen-year-old daughter he was accused of sexually molesting).

recording of the interview, coupled with the English and Spanish versions of the advisement-of-rights form and the detective's testimony about how he utilized those forms, provides necessary context for evaluating voluntariness. This evidence confirms that Walker spoke to the appellant about his rights calmly and in a conversational voice. Walker obtained verbal confirmation that the appellant understood each one before proceeding to the next right. The detective further explained to him that signing the advisement-of-rights form was not an admission of guilt. We hold that the record entirely supports the legal conclusion that the appellant's waiver and subsequent statements to Walker were made voluntarily. *See Tirado*, 296 Va. at 28-29 (holding that the defendant provided "no evidence or assertion" of coercion that rendered his waiver involuntary). Consequently, the first component required for a lawful *Miranda* waiver was met.

The second requirement or factual component, the "knowing and intelligent requirement of a *Miranda* waiver[,] focuses on whether the defendant comprehended the plain meaning of the required warnings." *Id.* at 29. The Commonwealth "bears the burden of showing a knowing and intelligent waiver" to the satisfaction of the trial court. *Id*. at 27 (quoting *Angel*, 281 Va. at 257-58). That court's decision will not be reversed unless "plainly wrong." *Id.* at 27-28 (quoting *Angel*, 281 Va. at 258). The analysis takes into account the totality of the circumstances. *Id.* at 28. "Courts may consider 'the defendant's age, education, language, alienage, experience with police, and whether the defendant stated that he understood his rights as read to him' to evaluate 'whether the defendant comprehended the plain meaning of the required warnings.'" *Keepers*, 72 Va. App. at 37 (quoting *Tirado*, 296 Va. at 29).

The appellant argues that his *Miranda* waiver was not valid because he "has only the barest functionality with the English language." The law is clear that a defendant's waiver in a second language is valid as long as he sufficiently understands the rights he surrenders. *See*

- 7 -

*Tirado*, 296 Va. at 29-30.  In *Tirado*, the Supreme Court of Virginia upheld a waiver given in a defendant's second language, noting that the defendant chose to speak that language, affirmed that he understood each *Miranda* right and signed the waiver form, and "responded appropriately" to the questions.  *Id.*  The Court reached this conclusion despite the defendant's claim at trial that he did not understand his rights at the time of his interview.  *Id.* at 30 (recognizing that the trial court, in its role as fact finder, was "not bound to accept [the defendant's] self-serving testimony").

To assess the appellant's claim that the waiver was not knowing and intelligent, we look to the totality of the circumstances to determine if the facts support the trial court's conclusion.  The appellant was thirty-two years old at the time of the interview.  He had a middle-school education in his country of origin.  At the time of the police interview, he had been in the United States for seventeen years and had been a citizen for about seven of those years.[10]  At the interview's start, he confirmed to Detective Walker that although he could not read or write English, he could understand and speak it.  In fact, he was speaking English at that time.  In an abundance of caution, Walker gave him a rights form written in Spanish that enumerated each *Miranda* right.  The appellant reviewed each right written in Spanish as the detective verbally identified it in English.  The appellant verbally acknowledged in English that he understood the rights.  He then signed the Spanish rights form.

For the almost fifty-minute interview, the appellant and the detective spoke entirely in English in a very conversational manner.  During that time, the appellant provided responsive and sometimes detailed answers about the history of his relationship with D.S. and her mother. He also discussed the specifics of the allegations.  When he appeared a few times not to grasp a

_____

[10] The police interview occurred more than eight months before the suppression hearing, at which the appellant testified he had been a citizen for eight years.

- 8 -

particular word or term, Walker rephrased the question so that the appellant could understand.[11] At trial, the appellant acknowledged on cross-examination that many of the answers he gave to Detective Walker in English during the interview matched the trial testimony he gave through a Spanish interpreter.

In his argument on brief, the appellant concedes that in the interview, he "spoke without any hesitation for minutes on end about D.S. and her mother, and the issues that had arisen between them." He similarly notes that he "expressed utter shock in the interview when the detective explained" the nature of the allegations. Further, he acknowledges that "[a]fter the detective repeated and clarified [the allegations], [he] promptly said he would want his attorney present to prove that th[ey were] not true." Although the appellant now argues that he did not understand the rights he waived, he asserted those very rights at the end of the interview when he told Walker that he did not "wanna say anymore [sic]" and indicated that he planned to "wait 'til [he] g[ot his] attorney." As a result of those comments, Walker complied without question and ended the interview.

The record supports the trial court's factual finding that the appellant had a "sufficient command of the English language" to render him able to waive his rights pursuant to *Miranda* in a way that was knowing and intelligent.

The appellant asserts that he did not understand "the consequences of the decision to abandon" his *Miranda* rights because he "did not know why he was in police custody." This suggestion is unavailing. "[W]hether [the defendant] fully appreciates the beneficial impact on his defense that silence may have—whether he fully understands the tactical advantage, in our

---

[11] For example, when asked about a previous address, the appellant did not understand the meaning of "prior" but did understand the word "before" and provided a responsive answer.

system of justice, of not speaking—does not affect the validity of his waiver." *Tirado*, 296 Va. at 29 (alterations in original) (quoting *United States v. Yunis*, 859 F.2d 953, 965 (D.C. Cir. 1988)).

The facts also belie this contention. At the beginning of the interview, Detective Walker told the appellant what the alleged crimes were, reciting the general offenses. The detective also conveyed that his circumstances were "serious" and told the appellant the identity of the victim. When Walker later reemphasized the seriousness of the allegations, the appellant replied "correct." Additionally, the appellant was not new to the criminal justice system. He had prior experience with the police due to a domestic violence incident and specifically discussed with Walker how D.S.'s mother had previously "put [him] in jail" as a result of other allegations. Toward the end of the interview, he asked Detective Walker about getting bond. Again, the record supports the trial court's finding that the appellant had a "firm understanding" of the seriousness of the charges.

Lastly, the appellant argues he did not waive his *Miranda* rights because he never expressed that waiver verbally. It is true that "a valid waiver will not be presumed simply from the silence of the accused." *Angel*, 281 Va. at 259 (citing *Harrison v. Commonwealth*, 244 Va. 576, 582 (1992)). But "*Miranda* [does not] require[] a waiver to be in writing or verbally expressed, nor does it preclude the conclusion that a waiver occurred based on the suspect's course of conduct." *Id.* (citing *Harrison*, 244 Va. at 582). Accordingly, a "waiver may be inferred from the words and actions of" the individual being questioned. *Thomas*, 72 Va. App. at 582 (citing *Harrison*, 244 Va. at 582).

Again, in this case, the appellant verbally expressed his understanding of his rights as Detective Walker went through each enumerated right on the Spanish rights form, which he then signed. The appellant's ensuing voluntary communication with the detective, as well as his

termination of that communication, demonstrates the validity of his waiver. *See id.* at 586 (holding that the defendant's choice to reengage with detectives after asserting his right to silence was an implied waiver); *Angel*, 281 Va. at 259-60 (holding that the juvenile defendant's voluntary conversation with officers after signing a Spanish *Miranda* "waiver of rights form" was a valid waiver). The tone of the interview was conversational, and it lasted only about fifty minutes. It ended when the appellant verbally asserted his rights to remain silent and to have an attorney present, demonstrating that he both understood those rights and initially chose to waive them. These facts support the trial court's findings that the appellant "acknowledged" his *Miranda* rights both verbally and in writing and validly waived them by his conduct. Consequently, like the first, the second component required for a lawful *Miranda* waiver, that it was knowing and intelligent, was met.

## CONCLUSION

The trial court's ruling that the appellant waived his *Miranda* rights voluntarily, knowingly, and intelligently is supported by the law and the record. We hold that the trial court did not err by denying the motion to suppress, and the convictions are affirmed.

*Affirmed.*