COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


EDDLON DON KNOX, III
                                                         OPINION BY
v.        Record No. 0955-07-1          JUDGE RANDOLPH A. BEALES
                                                         JULY 22, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Patricia L. West, Judge

    George H. Yates (Kristine C. Spicker; George Holton Yates &
    Associates, on brief), for appellant.

    Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
    McDonnell, Attorney General, on brief), for appellee.


    Eddlon Don Knox, III (appellant) entered conditional guilty pleas to the following

offenses:  first-degree murder, in violation of Code § 18.2-32; attempted robbery, in violation of

Code §§ 18.2-58 and 18.2-26; conspiracy to commit robbery, in violation of Code §§ 18.2-58

and 18.2-22; and, use of a firearm in the commission of a felony, in violation of Code

§ 18.2-53.1.  On appeal, appellant argues that the trial court erred in denying his motion to

suppress statements made during an interview with police.  For the reasons that follow, we

affirm.

I. BACKGROUND

    The facts underlying appellant's motion to suppress are not in dispute.  On April 24,

2006, appellant was arrested by Virginia Beach police officers pursuant to a warrant charging

him with conspiracy to commit robbery.  Later that day, Detectives Seabold and Pickell, both of

the Virginia Beach police department, interviewed appellant about his involvement in the crimes

to which he later entered conditional guilty pleas. The interview was videotaped, and a summary of the interview was introduced as an exhibit at the hearing on the motion to suppress.

Prior to questioning, Detective Seabold advised appellant of his <u>Miranda</u> rights. Appellant acknowledged that he understood the rights Seabold read to him. After "Seabold advised Knox that he was going to ask him questions about that day and the people who were involved," appellant said, "I don't even want to talk right now. Not right now." Seabold immediately stopped his interrogation of appellant.

Detective Pickell, who had remained silent until that point, asked appellant if he would like something to drink. Appellant responded, "I'm all right," but then appellant asked Pickell, "Can we just talk later?" Pickell explained to appellant that "there might not be a later," as two of appellant's alleged co-conspirators had been arrested and had given statements to the police. Pickell continued by saying he had the feeling that appellant was not part of that group and that he should give the police his side of the story. Thereafter, appellant made incriminating statements that admitted his involvement in a felony murder.

The trial court denied appellant's motion to suppress, concluding that "without reaching whether or not the defendant initially invoked his right to remain silent – because I don't have to reach that particular issue – it is clear to me that once the defendant reinitiated the conversation, that he waived that right." The court opined, "The incriminating statements flowed from a conversation initiated by the defendant. He asked the detective if they could talk later. The detective answered the question, and then the incriminating statements flowed from that conversation."

The trial court accepted appellant's conditional guilty pleas on the charges of first-degree murder, attempted robbery, conspiracy to commit robbery, and use of a firearm in the

commission of a felony.  The court sentenced appellant to eighty-three years in jail, with

thirty-three years suspended (for a total active sentence of fifty years).  This appeal followed.

## II. ANALYSIS

"On appeal from a denial of a motion to suppress, the burden is upon the defendant to

show the trial judge's ruling, when the evidence is viewed most favorably to the Commonwealth,

constituted reversible error."  Green v. Commonwealth, 27 Va. App. 646, 652, 500 S.E.2d 835,

838 (1998).  "[I]n conducting its independent review, an appellate court must review the circuit

court's findings of historical fact only for clear error, and the appellate court must give due

weight to inferences drawn from those factual findings."  Commonwealth v. Redmond, 264 Va.

321, 327, 568 S.E.2d 695, 698 (2002).  However, "we review *de novo* the trial court's

application of defined legal standards to the particular facts of a case."  Cary v. Commonwealth,

40 Va. App. 480, 486, 579 S.E.2d 691, 694 (2003).

"For a confession given during custodial interrogation to be admissible, the

Commonwealth must show that the accused was apprised of his right to remain silent and that he

knowingly, intelligently, and voluntarily waived that right."  Green, 27 Va. App. at 652, 500

S.E.2d at 838.

> [T]he Court [in Miranda] held that an express statement can
> constitute a waiver, and that silence alone after such warnings
> cannot do so.  But the Court did not hold that such an express
> statement is indispensable to a finding of waiver.  An express
> written or oral statement of waiver of the right to remain silent or
> of the right to counsel is usually strong proof of the validity of that
> waiver, but is not inevitably either necessary or sufficient to
> establish waiver.  The question is not one of form, but rather
> whether the defendant in fact knowingly and voluntarily waived
> the rights delineated in the Miranda case.  As was unequivocally
> said in Miranda, mere silence is not enough.  That does not mean
> that the defendant's silence, coupled with an understanding of his

rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights.

North Carolina v. Butler, 441 U.S. 369, 373 (1979).

"[T]he inquiry [of] whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).

> [The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of the circumstances. This factual finding will not be disturbed on appeal unless plainly wrong.

Id. (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985)).

A. INVOCATION OF THE RIGHT TO REMAIN SILENT

"Miranda [v. Arizona, 384 U.S. 436 (1966),] recognized that if a suspect 'indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'" Midkiff v. Commonwealth, 250 Va. 262, 267, 462 S.E.2d 112, 115 (1995) (quoting Miranda, 384 U.S. at 473-74). However, "a clear and unambiguous assertion of the right to remain silent or to counsel is necessary before authorities are required to discontinue an interrogation." Green, 27 Va. App. at 653, 500 S.E.2d at 838. "But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available *or the suspect himself reinitiates conversation*." Davis v. United States, 512 U.S. 452, 458 (1994) (emphasis added). See also Oregon v. Bradshaw, 462 U.S. 1039, 1043 (1983) (forbidding further interrogation "'unless the accused himself initiates further communication, exchanges, or conversations with the police.'" (quoting Edwards v. Arizona, 451 U.S. 477, 485 (1981))); Green, 27 Va. App. at 653-54, 500 S.E.2d at 838-39 (finding

appellant, after "initially invok[ing] his right to silence," "voluntarily expressed his desire to make further statements") (citing Davis, 512 U.S. at 462).[1]

Here, in response to Detective Seabold's expressed desire to talk with appellant "about that day and the people who were involved," appellant stated, "I don't even want to talk right now. Not right now." The trial court assumed without deciding that appellant's statement was sufficient to assert his right to remain silent. We likewise assume without deciding that appellant invoked his right to remain silent and turn, as the trial court did, to the question of whether or not appellant waived his right to remain silent by reinitiating a conversation with police.

Before turning to that question, however, we note that Detective Seabold honored appellant's right to remain silent by stopping the interrogation. See Medley v. Commonwealth, 44 Va. App. 19, 37, 602 S.E.2d 411, 419 (2004) (*en banc*) ("'the admissibility of statements obtained after [a] person in custody has decided to remain silent depends under Miranda on whether his "right to cut off questioning" was "scrupulously honored."'" (quoting Michigan v. Mosley, 423 U.S. 96, 102 (1975))). As the United States Supreme Court held in Mosley,

> Through the exercise of his option to terminate questioning [a suspect] can control the time at which questioning occurs, the

---

[1] The analysis performed in cases involving the right to remain silent and the right to counsel differs when the police reinitiate a conversation with a suspect who has invoked either right, but remains the same if the suspect reinitiates. If a suspect reinitiates the conversation, Bradshaw governs that point irrespective of whether the suspect initially invoked the right to counsel or the right to remain silent. See Christopher v. Florida, 824 F.2d 836, 844-45 (11th Cir. 1987) ("While we recognize that Edwards and Bradshaw are right to counsel cases, and that [Michigan v.] Mosley[, 423 U.S. 96 (1975),] governs the admissibility of statements made following the suspect's invocation of his right to cut off questioning, Mosley, 423 U.S. at 104, 96 S. Ct. at 326, we accept the State's implicit claim that there are situations where the 'initiation' test of Edwards/Bradshaw governs the admissibility of statements made after a suspect has invoked his right to terminate questioning," and, thus, "the Edwards/Bradshaw rule merges with the test of Mosley to render inadmissible statements obtained during a 'significant period' after a request to cut off questioning, *unless the statements were the product of a conversation initiated by the suspect under the test of Edwards/Bradshaw*." (emphasis added)). See also United States v. Thongsophaporn, 503 F.3d 51, 56-57 (1st Cir. 2007) (applying Bradshaw reinitiation test following an invocation of the right to remain silent under Mosley).

> subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under <u>Miranda</u> on whether his "right to cut off questioning" was "scrupulously honored."

423 U.S. at 104-05. Here, Seabold *immediately* terminated questioning after appellant informed him that he did not want to talk "right now." In so doing, Detective Seabold respected appellant's "exercise of that option" and, therefore, "scrupulously honored" appellant's right to remain silent. <u>Id.</u>[2]

### B. REINITIATION OF THE CONVERSATION WITH POLICE

"If 'the accused, not the police, [reopens] the dialogue with the authorities,' a court, upon consideration of that fact and 'the totality of the circumstances,' may reasonably find that the accused has made a 'knowing and intelligent' waiver of his rights." <u>Harrison</u>, 244 Va. at 583, 423 S.E.2d at 164 (quoting <u>Edwards</u>, 451 U.S. at 486 n.9). The dialogue initiated by the accused must demonstrate "a willingness and a desire for a generalized discussion about the investigation." <u>Bradshaw</u>, 462 U.S. at 1045. If it is found that the accused reinitiated a conversation,

> the next inquiry [is] "whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities."

<u>Id.</u> at 1046 (quoting <u>Edwards</u>, 451 U.S. at 486 n. 9).

---

[2] The fact that Seabold honored appellant's assumed invocation of his right to remain silent distinguishes this case from our recent opinion in <u>Ferguson v. Commonwealth</u>, __ Va. App. __, __ S.E.2d __ (July 22, 2008) (*en banc*). There, we held that a police investigator, by continuing to interrogate Ferguson after he asserted his right to counsel, did not honor Ferguson's request. Thus, the failure to honor Ferguson's request "tainted any subsequent confession made by [Ferguson] while he remained in the continuous custody of police officers." <u>Id.</u> at ___, ___ S.E.2d at ___.

In Bradshaw, after invoking his Fifth Amendment right to counsel, the defendant asked police, "Well, what is going to happen to me now?" The plurality opinion of the United States Supreme Court held,

> Although ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship. It could reasonably have been interpreted by the officer as relating generally to the investigation.

462 U.S. at 1046.[3] However, according to the Court's plurality opinion, some routine questions, asked either by police or by the accused while in custody, do not reinitiate a conversation:

> There are some inquiries, *such as a request for a drink of water* or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, *by either an accused or a police officer*, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in Edwards.

462 U.S. at 1045 (emphasis added).

Here, after Seabold stopped interrogating appellant, Detective Pickell, who had not previously asked appellant any questions, asked appellant whether he would like something to drink. That was the only thing the police asked appellant after he said, "I don't even want to talk right now. Not right now." As Bradshaw makes clear, and as the trial court correctly found, the

---

[3] The four members of the Court who dissented in Bradshaw agreed with the plurality opinion that, "in order to constitute 'initiation' under Edwards, an accused's inquiry must demonstrate a desire to discuss the subject matter of the criminal investigation." 462 U.S. at 1055. The dissenting judges, however, differed with the plurality's application of that principle to the facts of that case. Justice Powell, who concurred in the judgment "that Bradshaw knowingly and intelligently waived his right to counsel," did not agree, however, with the two-step analysis that the other justices in the plurality opinion employed to decide the case. Instead, Justice Powell believed "the question of whether a suspect has waived this important right to counsel is uniquely one of fact, and usually must and should be left to the judgment of the trial court that has had the benefit of hearing the evidence and assessing the weight and credibility of testimony." 462 U.S. at 1051.

question Pickell asked appellant – "would you like something to drink?" – did not reinitiate an interrogation of appellant.  However, appellant, after declining Pickell's offer of something to drink, asked Detective Pickell a specific question -- "Can we just talk later?"[4]  Pickell answered appellant's question by explaining that "there might not be a later" since two of appellant's co-conspirators had given statements to the police and that now was the opportunity for appellant to tell his side of the story.[5]  Appellant then chose to continue his conversation with the police, and in the course of that conversation, appellant admitted his involvement in a robbery and a murder.  The trial court, therefore, found that the incriminating statements appellant made "flowed from a conversation [appellant] initiated."[6]

---

[4] Appellant argues that to decide this issue, we must consider the question he posed to Detective Pickell in the context of the statement he previously made to Detective Seabold.  We note, however, that the United States Supreme Court in <u>Smith v. Illinois</u>, 469 U.S. 91 (1994), suggested otherwise:

> Where nothing about the request [to remain silent] or the circumstances leading up to the request would render it ambiguous, all questioning must cease.  In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked.  Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together.

469 U.S. at 98.

[5] Of course, the police generally have no obligation to talk to an accused at any time.

[6] In his brief, appellant argues that "upon *any* re-initiation [the police] must again advise [appellant] of his rights."  (Emphasis added.)  We disagree and believe instead "that once a defendant has been fully and fairly appraised of his rights, there is no requirement that the warnings be repeated each time the questioning is commenced."  <u>State v. Miller</u>, 522 P.2d 23, 24 (Ariz. 1974).  <u>See also</u> <u>Gorman v. United States</u>, 380 F.2d 158, 164 (1st Cir. 1967) ("[A]dvocacy of an automatic second-warning system misunderstands and downgrades the warnings required by <u>Miranda</u>.  Their purpose was not to add a perfunctory ritual to police procedures but to be a set of procedural safeguards 'to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it.'" (quoting <u>Miranda</u>, 384 U.S. at 444)); <u>State v. Castaneda</u>, 724 P.2d 1, 6 (Ariz. 1984) (rejecting the defendant's assertion that he must be re-Mirandized after a reinitiation).

Like Bradshaw's question to police ("Well, what is going to happen to me now?"), appellant's question to Pickell -- "Can we just talk later?" -- related generally to the pending investigation and not to "the incidents of the custodial relationship," as might "a request for a drink of water or a request to use a telephone." Bradshaw, 462 U.S. at 1046. See Harrison, 244 Va. at 582-83, 423 S.E.2d at 164 (Assuming Harrison's "silence following his acknowledgement that he understood his Miranda rights was an implicit invocation of those rights," "Harrison reopened the dialogue by inquiring 'what was going to happen to him.'"). See also United States v. Velasquez, 885 F.2d 1076, 1085 (3d Cir. 1989) ("By asking the question ['What is going to happen?'], Velasquez initiated the conversation. While the question itself may not be free of all ambiguity, its context supports the conclusion that it was directed toward the investigation."). We hold, therefore, that, since appellant's question to Detective Pickell related generally to the investigation and was not merely incidental to the custodial relationship, the trial court correctly decided that appellant reinitiated the conversation with police.

Because appellant reinitiated the conversation with police and appellant's incriminating statements flowed from the conversation that followed from the question appellant posed to Detective Pickell, the trial court properly found that appellant knowingly and intelligently waived his right to remain silent. As the trial court astutely noted, while appellant may not have liked the answer Detective Pickell gave him to the question appellant asked, he nevertheless chose at that point to continue the conversation he had initiated with Detective Pickell and, in the process, made statements admitting his involvement in the crimes to which he ultimately pled guilty. Therefore, taking into account the totality of the circumstances, we hold that the trial

Here, approximately two minutes passed between Detective Seabold's reading of the Miranda warnings to appellant and appellant's reinitiation of a conversation with Detective Pickell. Given that extremely short duration of time, Pickell was not required to read the Miranda warnings to appellant again.

court was not plainly wrong in determining that appellant waived his right to remain silent. Consequently, the trial court did not err in denying appellant's motion to suppress.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of appellant's motion to suppress. We likewise affirm those convictions to which appellant entered conditional guilty pleas.

<u>Affirmed.</u>