# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Taneak Quvaughn Turner

December 10, 2015

Case No. 14–318

BY JUDGE RICHARD E. MOORE

I have now had a chance to read all of the memoranda submitted relating to the motion of Defendant to suppress the statement given by him to the detectives at the Charlottesville Police Department on June 2, 2014, including the supplemental submissions following the October 6, 2015, hearing and the case law submitted or cited, as well as the transcript of such statement. I also reviewed my notes from the hearing.

*Issue*

The Defendant is asking that any statements he made to the police in Charlottesville after the conclusion of the interview in Spotsylvania County on June 2, 2014, be suppressed and not be allowed to be admitted into evidence and used at trial, which is now set for January 11, 2015, with a jury. As the basis for his motion and request, Defendant states that he asserted in Spotsylvania his right to silence under *Miranda v. Arizona,* 384 U.S. 436 (1966), and the officers re-initiated the questioning later in Charlottesville not in compliance with *Michigan v. Mosley,* 423 U.S. 96 (1975), and *Weeks v. Commonwealth,* 248 Va. 460 (1994).

*Facts*

The defendant was arrested on June 2, 2014, in Spotsylvania County, Virginia, pursuant to an arrest warrant for first-degree murder. Detective Logan Woodzell read the defendant his rights pursuant to *Miranda v. Arizona,* above. The defendant was presented with a Charlottesville Police Department Rights Advisory form, which he signed and returned to Detective Woodzell and Det. Steven Cason. The form states (1) that he has the right to remain silent and the right to talk to a lawyer before questioning and have one present during the questioning, (2) that, if he cannot afford a lawyer, one would be provided for him, (3) that anything he says can be used against him in court, and (4) that, if he is willing to talk with the detectives, he has the right to stop talking at any time. It then says "Sign here if you understand your rights and are willing to talk to us about this case." They also went over his rights and the form in the interview. (Transcript of Interview, 6/2/14, page 1.) Defendant signed the rights advisory/waiver form at 11:21 a.m., and was then interrogated by the detectives about the events of May 9th and 10th, 2014, at Al Hamraa restaurant in Charlottesville.

During the interrogation, after a few minutes (five, I believe) of speaking with the officers and giving them some information about the offenses they were questioning him about (Tr. 6/2/14, pages 1-3), the Defendant expressed that he did not want to continue speaking with the detectives at that time, and that he wanted to rest some before speaking further. The first thing he specifically asked was, "Can we do this on a later date?" When Detective Woodzell said "I'm trying to talk to you now . . . OK?," the defendant replied "Yeah." When Detective Cason followed up with the question, "Do you still want to talk to us . . . no?," the Defendant responded, "Not right now." (Tr. 6/2/14, page 3.)

Following this exchange, the Defendant twice stated that he "just" wanted some time to rest. At that point, the detectives continued to speak with the Defendant for about one minute longer, not asking substantive questions about the case itself, but being sure that he did not want to continue to speak with them about the case at that time. The defendant stated, "I'll talk to y'all I just don't want to . . . feel like talking right now."

Detective Cason then asked if he wanted to "wait a little bit till we get back to Charlottesville" to continue the interrogation then and there. The defendant said, "Something . . . I'm tired." Det. Cason then said that the drive would give him a couple of hours . . . about an hour and a half or so for the ride back." Det. Woodzell suggested that Mr. Turner could take a nap on the ride back, and the defendant responded, "Yeah . . . something." When Det. Cason posed the question, "You want to do that? Alright . . . we'll talk to you there," the Defendant replied with an affirmative "OK." They addressed the case no further at that point.

On the drive back to Charlottesville, which took approximately ninety minutes, no questioning took place and the defendant had his eyes closed some of the way. The detectives then resumed interrogating the Defendant once they arrived at the Charlottesville Police Department, approximately one hour and forty minutes after the Defendant signed the Rights Advisory form in Spotsylvania County, and about 1½ hours after leaving Spotsylvania. The defendant was not re-advised of his *Miranda* rights in Charlottesville and proceeded to make statements about the events and facts surrounding this case. He did not explicitly invoke his right to silence. He did not assert that he still did not wish to talk at that time, nor that he was still tired and needed more time to rest. His demeanor on the video recording evinced no unwillingness on his part to speak with the detectives and continue the questioning pursuant to his earlier waiver. There was no persuasion by the detectives to get him to keep speaking to them.

## Analysis

The Defendant asks this Court to consider four questions:

(1) Did the Defendant invoke his 5th Amendment right to remain silent during the Spotsylvania interrogation;

(2) Did the detectives stop their interrogation of the Defendant when he invoked his right to remain silent in Spotsylvania;

(3) Did the Defendant initiate further conversations with his interrogators after he invoked his right to remain silent; and,

(4) Did the Defendant waive his right to remain silent at any time after he invoked it?

I will address first whether the Defendant's statements at the conclusion of the interrogation in Spotsylvania effected an assertion of his right to remain silent. Specifically, the question is whether any of the defendant's ten answers or statements constitute a clear, unambiguous, and unequivocal desire to end the interrogation and invoke his right to silence.

His responses at issue here are: "Can we do this on a later date?," "Yeah," "Not right now," "I understand . . . I just want to rest," "I just want to rest," "Yeah," "I'll talk to y'all I just don't want to . . . feel like talking right now.", "Something . . . I'm tired," "Yeah . . . something," and (in response to "Do you want to do that?") "OK."

The defendant argues that his "Not right now" assertion constituted a clear statement that invoked his 5th Amendment right to remain silent.

The Commonwealth asserts that the Defendant unequivocally and knowingly waived his right to remain silent at the beginning of the interview in Spotsylvania, and that this waiver continued throughout that interview and into its continuation in Charlottesville, and was never unambiguously and unequivocally revoked. The Commonwealth posits that the defendant's

"Not right now" statement conveyed an intention to delay the interrogation, to be resumed later, but not end the interview altogether or refuse to speak further with the detectives. Thus, this was not a clear unequivocal revocation of the earlier waiver or an assertion of his right to remain silent.

Upon a review of all the pertinent case law and a consideration of all the arguments of counsel, I agree with the Commonwealth that Defendant's statements, taken together, were not an unambiguous assertion of his desire to end the interrogation by the detectives or a refusal to answer further questions. The defendant's "Not right now" statement, especially in light of the other things he said, both before and after that phrase, was not enough to rise to the level of a clear, unambiguous, unequivocal assertion of his right to silence and a revocation of his prior waiver. Statements made by him prior to and following "Not right now" manifest the defendant's intent to continue the interrogation once he had the opportunity to rest, which he was able to do on the ride to Charlottesville from Spotsylvania. Therefore, as discussed below, I find that Defendant's statements requested a temporary break in the interrogation, he was thus controlling the time of the questioning as he has a right to do, but did not evince an intent to terminate the interrogation or stop the questioning altogether. Thus, I interpret it to be simply a request for a pause in the ongoing interrogation, rather than an invocation of his 5th Amendment right to silence. I note that there were no other substantive questions asked or answered after the defendant said "Not right now," until they got to Charlottesville after the break. And the detectives spoke to him for only a minute or less after he said "Not right now," in part to clarify his desire to take a break before continuing.

## Discussion of Authority

In *Miranda v. Arizona,* cited above, the U.S. Supreme Court stated that, once the required warnings have been given to a person before custodial interrogation, the interrogation must cease if the individual, "at any time prior to or during questioning," expresses a desire to remain silent. 384 U.S. at 474. Any statement taken after the individual has shown an intention to exercise his Fifth Amendment privilege is the product of compulsion. *Id.*

But, when a suspect waives his constitutional rights after being read *Miranda* warnings, the court presumes that the waiver remains until the suspect manifests, "in some way which would be apparent to a reasonable person, his desire to revoke it." *Mitchell v. Commonwealth,* 30 Va. App. 520, 526-27, 518 S.E.2d 330, 333 (1999), quoting *Washington v. Commonwealth,* 228 Va. 535, 548-49 (1984). And, without a clear and unambiguous assertion of the right to remain silent, authorities are not required to discontinue an interrogation. *Green v. Commonwealth,* 27 Va. App. 646, 652, 500 S.E.2d 835, 838 (1998), also quoting *Washington,* 228 Va. at 548-49.

The Defendant initially waived his constitutional right to silence when he signed the Rights Advisory form and began speaking with the detectives in

Spotsylvania. This is not disputed. His statements at the end of the interview in Spotsylvania do not manifest a clear desire to stop the interrogation. He did not say "I no longer want to speak with you" or "I am not going to answer any more of your questions." As noted in *Akers v. Commonwealth,* 216 Va. 40, 46, 216 S.E.2d 28, 32 (1975), and *Midkiff v. Commonwealth,* 250 Va. 262, 268 (1995), quoting *Akers,* he easily could have done so. He certainly did not say he wanted to invoke his right to silence. The transcript provides that the defendant answered "Not right now" when asked whether he wanted to continue talking with the detectives. This comes after he had just asked about continuing the questioning "later." Detective Cason asks the question "Taneak, do you still want to talk to us . . . no?" Instead of following the detective's prompt and just saying "no," Defendant's statements demonstrate his desire to continue speaking with the detectives at a later time once he had the opportunity to get some rest. His responses imply a conditional, temporary reaction to his interrogation, which required some clarification by the detectives. He specifically says "I'll talk with you, but . . . not right now." This is not an assertion of a right to silence.

As in *Green v. Commonwealth,* 27 Va. App. 646, 654, 500 S.E.2d 835, 839 (1998), here there is "nothing within [Defendant's] statement [that] connotes a desire to cease all questioning" (quoting *Midkiff*). On the contrary, inherent in them is the expectation and desire that the questioning will continue a short time later, and he expresses no objection to that. It is significant that the statements being complained of were not given in Spotsylvania immediately after he says he wants a break or rest, but rather in Charlottesville after he has had such a break.

Whether there would be a different analysis and outcome had the officers continued to press and ask him substantive questions in Spotsylvania after he had said "later" (and especially if he answered the questions) is a question not before the Court in this case. In fact, they did pause for over an hour and let him rest on the drive back to Charlottesville, during which it is undisputed that there was no questioning of the defendant at all.

*Knox v. Commonwealth,* 52 Va. App. 366 (2008), cited by the parties, while involving a very similar statement, "I don't even want to talk right now. Not right now," does not provide any assistance in determining whether Defendant's statements here were a clear and unambiguous assertion of the right to silence. First, in *Knox,* the Virginia Court of Appeals assumed without deciding that the defendant invoked his right to silence. *Id.* at 375. Second, the detectives there ceased questioning at that point, and only resumed after the defendant there initiated further conversation. *Id.* at 370, 375-76. Third, those statements did not follow a prior knowing, voluntary, and written waiver, but were the first response to his being advised of his *Miranda* rights. So, even though the *Knox* case is clearly distinguishable from our case, the statements there were held admissible because the defendant re-initiated the questioning, even if he had invoked his privilege.

In our case, the detectives did ask questions to confirm the defendant's desires as to continuing the interrogation. Detective Woodzell, in response to the defendant's "Not right now," states, "If you don't want to talk that's fine. But this is your opportunity to talk to me and give me your side of why these things happened." In response, the defendant answers Detective Woodzell's inquiry with another statement failing to assert his desire to end the interrogation with the police. The Defendant's answer, "I understand . . . I just want to rest," does not unambiguously show a desire to end the interrogation. He does not say, for example, "I don't want to talk to you anymore."

Detective Woodzell provided a third opportunity for the Defendant to continue the questioning stating, "I just don't want you to miss an opportunity to tell me your side of why this happened and have others speak for you if you don't." The Defendant responded, "No . . . I'll talk to y'all. I just don't want to . . . feel like talking right now." This affirmation of his desire and willingness to speak further with the police is a clear indication of the Defendant's intention to continue the interrogation at a later time. In the discussion that follows between the defendant and the detectives, the defendant agrees to continue the interrogation upon his arrival in Charlottesville. For these reasons, I find that the defendant's statements are analogous to pressing the "pause button" on the ongoing interrogation, in contrast to pressing the "stop button."

Defendant argues that the detectives were required to scrupulously honor his assertion of the right to remain silent by immediately terminating questioning. However, without a clear assertion of the defendant's intent to remain silent, the detectives were not required to terminate questioning. I do not find that he expressed a desire to remain silent or terminate all questioning, and he did not invoke his 5th amendment right to silence, nor did he revoke his previous waiver of his right to silence. My interpretation of his responses is that he agreed to continue the interrogation after he was able to rest. Because the defendant's "Not right now" or other statements were not an unambiguous assertion of his right to silence, the detectives did not have to immediately end the interrogation.

His most significant answers or statements in my reaching this conclusion are: (1) he first asks, "can we do this on a later date?," indicating he was willing to speak with them, but preferred not to at that time; (2) "not right now," implying that he would at a later time; (3) "I'll talk to y'all, but not now," clearly showing an intention to answer questions willingly later; and, (4) after being asked if he could just rest on the way back to Charlottesville and talk with them there, he responds "OK." None of his responses individually evince a clear and unambiguous assertion of his right to silence, and it is the Court's view that these four answers or statement, read together, evince just the opposite. Nevertheless, the detectives did

honor his request for a temporary break; they waited to question him further until he had had some time to rest.

The other two questions Defendant raises, whether Defendant initiated further conversation with the detectives and whether Defendant re-waived (or was re-advised) in Charlottesville, also are only relevant if the Defendant asserted his right to silence at the end of the Spotsylvania interrogation. It is true that a suspect who has invoked the right to remain silent may later waive such. *Knox,* 52 Va. App. at 375. However, the Defendant did not assert his right to silence, and it was proper for the detectives to resume and continue in Charlottesville the interrogation that they had started in Spotsylvania without re-advising or a second waiver.

While the rules in *Mosley* and *Weeks* (cited above on page one) govern when the police may continue interrogating someone after an assertion of the right to silence, they do not apply in this case because, as stated above, I find no assertion of such right. But it is worth noting that, even if Defendant had asserted his right to silence (that is, even if his responses are construed as asserting or invoking his right to silence), it is still not clear that the continued interrogation in Charlottesville was a violation of his rights. Under *Mosley, Weeks,* and others, if a suspect clearly asserts his right to silence the police may still, after a passage of time, re-approach the defendant to see if he wishes to speak. *Weeks,* in applying *Mosley,* sets forth five factors to consider. Clearly not all of them need to be present as all five were not all present in *Weeks.*

Defendant initially argued that the police could not re-initiate any questioning after an assertion of the right to silence. The Court noted that this is the rule as to an assertion of the right to counsel, but is not the rule as to the right to silence.

In this case, Defendant was clearly advised of his *Miranda* warnings; there is no question about that. While the detectives did not stop literally immediately, which is encouraged, they did stop after one minute, and did not ask any further substantive questions, but only clarified that he did not want to take the opportunity to continue talking at that time. It is true that Det. Woodzell's questions could be interpreted or construed as briefly trying to get him to continue speaking, nevertheless when the defendant made his will clear, they did then cease the questioning. Defendant's firmness itself showed that his will was not being overborne. Once he made it clear, they honored his decision to wait until later before any real questioning continued. In addition, once he said he wanted to continue the questioning later, which I characterize not as an unequivocal assertion of his right to silence, there is a significant break in time, during which he is allowed to rest and no questioning takes place. The *Mosley* case deemed over two hours to be a significant break. And, once back at the police department, when the questioning resumes, he does not say "I am not ready yet," or "I am still tired" or "I still do not want to talk with you." It also is clear

from the video of the interview that his will is not being overborne by the detectives or their questions. He appears comfortable, and more than willing to talk about the events he is being questioned about. It is true that he was not re-advised, nor reminded of his prior rights advisory, and they do not talk about a different offense. Nevertheless, taken as a whole the facts may well support the admissibility of his statements under *Weeks*, even if his responses were treated as an invocation of his right to silence and the police then re-approach him for new questioning after the passage to time, such that *Weeks* applied.

## Conclusion

Therefore, for the foregoing reasons, I will deny the motion to suppress the defendant's statement, will not exclude such from evidence at trial, and will enter an order to this effect.