UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges AtLee, Friedman and Senior Judge Annunziata
Argued by videoconference


COMMONWEALTH OF VIRGINIA

v.        Record No. 1587-25-1

SEAN EARL GITTENS

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 3, 2026

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Salvatore R. Iaquinto, Judge

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on briefs), for appellant.

James O. Broccoletti (S. Mario Lorello; Zoby & Broccoletti, P.C., on
brief), for appellee.


A grand jury indicted Sean Earl Gittens of one count of possession of a firearm by a felon,

in violation of Code § 18.2-308.2, and one count of receipt of a stolen firearm, in violation of Code

§ 18.2-108.1.  Gittens moved to suppress certain statements he made to law enforcement officers,

arguing that the statements were obtained in violation of his Fifth Amendment right to remain silent.

The trial court granted the motion to suppress.  Pursuant to Code § 19.2-398, the Commonwealth

now appeals that ruling.  The Commonwealth argues that Gittens reinitiated conversation with law

enforcement and thus waived his previously invoked right to silence.  For the following reasons, we

disagree and affirm the trial court.

---

[*] This opinion is not designated for publication.  See Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

I. BACKGROUND

In a Commonwealth's appeal of an order suppressing evidence, "the evidence must be viewed in the light most favorable to the defendant," the party who prevailed below. *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992).

As part of a narcotics investigation, the Chesterfield County Police Department executed search warrants in various jurisdictions of the Commonwealth, including at Gittens's residence in Virginia Beach. During execution of the warrant, law enforcement officers detained Gittens, bringing him outside and placing him in the front passenger seat of Detective Hopkins's truck. Initially, the truck was parked in the road in front of Gittens's house. After the scene was secured by the SWAT team, Hopkins moved the truck into Gittens's driveway.

Hopkins advised Gittens of his *Miranda*[2] rights before questioning him. Hopkins questioned Gittens about his involvement with narcotics, and most of the interview occurred while the truck was parked in the driveway. According to Hopkins, Gittens indicated his willingness to speak with Hopkins "on multiple occasions" during the interview, which was recorded.

Throughout the recording, however, Gittens expressed hesitation about speaking with Hopkins at that time because he was concerned that somebody could be watching him. Gittens indicated that he would be willing to speak with Hopkins later. Gittens offered to take Hopkins's number and call him, telling Hopkins, "I guarantee before you get down the block, I'll probably call you." Gittens told Hopkins that he "kn[ew] some things that [Hopkins] would want to know." Hopkins then asked if Gittens knew people moving drugs, and Gittens responded, "What do you think? Come on man. . . . I know people that do stuff like that." When Hopkins asked if Gittens wanted to talk to somebody about that, Gittens responded, "I'll talk to you." At this

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

point, approximately one hour and thirty minutes into the interaction, Hopkins asked Gittens, "But you don't want to talk right now?" Gittens answered, "No. You get what I'm saying?" Hopkins got out of the truck as Gittens was still speaking.

Almost immediately after Hopkins got out of the truck, Officer Joy got in. As she got in, Gittens said, "I know this is an everybody operation." He then explained to her that he had told Hopkins that "now is not the time" to have a conversation about "specifics." He also explained that he was concerned that people could be watching him. When Joy asked what would have made it better for him, Gittens suggested that the detective could have given him a phone number to call later or pulled him over to talk to him. Joy asked him if he had cooperated with police before. They also discussed the clothing that he was wearing. Joy advised Gittens that the detective was going to keep talking to him and told him to be honest when they speak.

Detective Hopkins returned, standing outside the truck to speak to Gittens through the open window. Hopkins questioned Gittens about a firearm located during the search of Gittens's residence, and Gittens admitted to the possession of the firearm. Hopkins did not remind Gittens of his *Miranda* rights or ask any questions about his prior statement that he was not willing to speak.

Before trial, Gittens filed a motion to suppress, arguing that Hopkins improperly questioned him about the firearm after Gittens had invoked his Fifth Amendment right to remain silent. He asked the court to suppress all statements made after he invoked that right. The Commonwealth responded that Gittens did not unambiguously invoke the right to remain silent, arguing that he only expressed reservations about being seen cooperating with law enforcement.

At the suppression hearing, Gittens asserted that he invoked his right to silence by answering "No" when Hopkins asked whether Gittens wanted to talk right now. He also argued that Hopkins should have reread him his *Miranda* rights before questioning him again. Rather

- 3 -

than an unequivocal invocation, the Commonwealth argued Gittens engaged in "a lot of hemming and hawing." It also argued that Gittens initiated the conversation with Joy and thus he "willingly and voluntarily" reinitiated the conversation and waived his invocation of the right to remain silent. Gittens responded that his remarks to Joy were just generalities and that Hopkins did not know that Gittens had reinitiated conversation with Joy.

The trial court found that Gittens invoked his right to remain silent when he said "No" in response to Hopkins's question about his willingness to speak right now. It found that during the conversation with Joy, Gittens was "not talking about the facts of the investigation as far as what's going on and his role in that investigation." Therefore, the trial court granted the motion to suppress the incriminating statements. The Commonwealth now appeals.

## II. ANALYSIS

In reviewing the trial court's ruling on a motion to suppress, "[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *McCracken v. Commonwealth*, 39 Va. App. 254, 258 (2002) (en banc) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). Though we review de novo the application of the law to those facts. *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019).

The Fifth Amendment of the United States Constitution guarantees that "[N]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "Upon taking a suspect into custody, police are required to warn him of his right to an attorney and the right to remain silent during questioning by police." *Thomas v. Commonwealth*, 72 Va. App. 560, 574 (2020). "If the defendant indicates that he wishes to remain silent at any point prior to or during questioning, 'the interrogation must cease.'" *Id.* (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)).

- 4 -

The Commonwealth concedes on appeal that Gittens invoked his right to remain silent. Instead, it argues that the officers "scrupulously honored Gittens's invocation and Gittens reinitiated the conversation with law enforcement," thus waiving his invocation of the right to remain silent. We disagree.

"[I]t is well settled that even if invoked, the *Miranda* right to silence can 'be waived by the suspect if the waiver is made knowingly and intelligently.'" Thomas, 72 Va. App. at 581 (alteration in original) (quoting *Medley v. Commonwealth*, 44 Va. App. 19, 34 (2004) (en banc)). An accused may, even after invoking, waive the right by "initiat[ing] further communication, exchanges, or conversations with the police." *Oregon v. Bradshaw*, 462 U.S. 1039, 1043 (1983) (emphasis omitted) (quoting *Edwards*, 451 U.S. at 485). Not all exchanges initiated by the accused will constitute a waiver of the previously invoked right. Some inquiries, such as a request for water or comments "relating to [the] routine incidents of the custodial relationship," do not rise to the level of waiving one's Fifth Amendment right once invoked. *Id.* at 1045. If an accused reopens the dialogue with law enforcement, a court must, "upon consideration of that fact and 'the totality of the circumstances,'" consider whether "the accused has made a 'knowing and intelligent' waiver of his rights." *Knox v. Commonwealth*, 52 Va. App. 366, 375-76 (2008) (quoting *Harrison v. Commonwealth*, 244 Va. 576, 583 (1992)). "[T]his determination depends upon '"the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused."'" *Bradshaw*, 462 U.S. at 1046 (second alteration in original) (quoting *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979)).

Here, Gittens's conversation with Officer Joy did not constitute a knowing and intelligent waiver of his previously invoked right to silence. Immediately after invoking his right to remain silent, Gittens attempted to explain to Detective Hopkins his reasons for invoking. Though Hopkins got out of the truck and Joy then got in, there was no significant passage of time

- 5 -

between the invocation and Gittens's conversation with Joy. That conversation, which Gittens does initiate, was simply a continuation of his explanation of the reasons he did not wish to speak with the police at that time. And while Gittens did state that he knew the investigation was "an everybody operation," and he indicated a willingness to speak to police sometime in the future,[3] his subsequent comments repeatedly confirm that he was not willing to speak with police at that time and the reasons for that unwillingness. Not all inquiries rise to the level of waiving a previously invoked right to silence, and Gittens's explanation of his reasons for invoking and his response to Joy's questions about what would make him more willing to speak with police are not sufficient to constitute a knowing and intelligent waiver of his previously invoked right to silence. Thus, when Hopkins returned and asked Gittens about the firearm, Gittens had not reinitiated conversation with the police in such a manner as to constitute a waiver of his previously invoked right to silence. Accordingly, we find that the trial court did not err in granting Gittens's motion to suppress any statements made after he invoked his right to remain silent.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's decision.

*Affirmed.*

---

[3] The facts of this case bear some similarities to other cases in which this Court has found that a suspect's reinitiation of conversation with police constituted a knowing and intelligent waiver of the right to remain silent. *See, e.g.*, *Knox*, 52 Va. App. at 376-79 (accused asking the police if they could "just talk later"). We note that the procedural posture in those cases was different. In *Knox*, the trial court concluded that the inquiry constituted reinitiation of the conversation, and thus we reviewed the facts in the light most favorable to the Commonwealth, as the prevailing party. Here, however, Gittens prevailed in the court below, and our standard requires us to view the facts in the light most favorable to him. *Peterson*, 15 Va. App. at 487.